UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

JOHN HANCOCK LIFE INSURANCE
COMPANY (U.S.A.), *et al.,*

          Plaintiffs,

vs.

ALLY FINANCIAL INC.
f/k/a GMAC, LLC, *et al*.,

          Defendants.

Case No. 12-cv-01841-ADM-TNL

---

**REPLY MEMORANDUM IN SUPPORT OF THE ALLY
DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

KIRKLAND & ELLIS LLP
Robert J. Kopecky (*pro hac vice*)
Seth A. Gastwirth (*pro hac vice*)
300 North LaSalle
Chicago, IL  60654
Tel:    (312) 862-2000
Fax:    (312) 862-2200
robert.kopecky@kirkland.com
seth.gastwirth@kirkland.com

TIMOTHY D. KELLY, P.A.
Timothy D. Kelly (#54926)
Sarah E. Bushnell (#0326859)
3720 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Tel:    (612) 349-6171
Fax:    (612) 392-7053
tkelly@timkellypa.com
sbushnell@timkellypa.com

***Attorneys for Defendants***
***Ally Financial Inc.,***
***Ally Bank,***
***IB Finance Holding Company, LLC,***
***Ally Securities LLC and***
***GMAC Mortgage Group, LLC***

Dated:  March 29, 2013

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 2

I.   The Complaint Fails To State A Claim Against The Ally Defendants For
     Common Law Fraud. ................................................................................... 2

     A.   The Complaint Fails To Allege Ally Bank Or Ally Securities
          Engaged In Conduct Sufficient To Support A Claim For Fraud. ................. 3

     B.   The Complaint Fails To State A Claim For Aiding And Abetting
          Fraud Against Ally Financial Or Ally Bank. ............................................ 7

II.  The Complaint Fails To State A Viable Federal Securities Act Claim
     Against Ally Securities. ............................................................................... 9

III. Plaintiffs' Minnesota Securities Act Claims Against The Ally Defendants
     Are Time-Barred. ..................................................................................... 12

IV.  The Complaint Fails To State A Claim Against The Ally Defendants For
     Negligent Misrepresentation. ..................................................................... 14

CONCLUSION ................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
  651 F. Supp. 2d 155 (S.D.N.Y. 2009) ................................................................. 7

*Allstate Ins. Co. v. GMAC Mortg., LLC*,
  2011 WL 7943021 (Minn. Dist. Ct. Nov. 28. 2011) ......................................... 5, 16

*American Pipe & Constr. Co. v. Utah*,
  414 U.S. 538 (1974) ............................................................................................. 9

*Armstrong v. Martin Marietta Corp.*,
  138 F.3d 1374 (11th Cir. 1998) ........................................................................... 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................. 2

*Bank of Montreal v. Avalon Capital Group, Inc.*,
  743 F. Supp. 2d 1021 (D. Minn. 2010) ............................................................... 5

*Barkley v. Woodbury County, Iowa*,
  874 F. Supp. 2d 759 (N.D. Iowa 2012) ......................................................... 11, 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................. 2

*Bormann v. Applied Vision Sys., Inc.*,
  800 F. Supp. 800 (D. Minn. 1992) ..................................................................... 12

*Bridges v. Dep't of Md. State Police*,
  441 F.3d 197 (4th Cir. 2006) .............................................................................. 11

*Cody v. Hillard*,
  304 F.3d 767 (8th Cir. 2002) .............................................................................. 13

*Conley v. Gibson*,
  355 U.S. 41 (1957) ............................................................................................... 2

*Cornerstone Home Builders, Inc. v. Guyers Dev., LLC*,
  2010 WL 1541344 (Minn. Ct. App. Apr. 20, 2010) ............................................ 17

*Crown, Cork & Seal Co. v. Parker*,
  462 U.S. 345 (1983) ........................................................................................... 10

**Page(s)**

*E-Shops Corp. v. U.S. Bank Nat'l Ass'n.*,
    678 F.3d 659 (8th Cir. 2012) ................................................................ 8

*FHFA v. Ally Financial*,
    2012 WL 6616061 (S.D.N.Y. Dec. 19, 2012) ........................................ 7

*Giovanniello v. ALM Media, LLC*,
    660 F.3d 587 (2d Cir. 2011) ................................................................ 11

*Gould v. Citi Mortg., Inc.*,
    2011 WL 7615124 (D. Minn. Dec. 29, 2011) .................................... 3, 4

*Hehman v. Head*,
    2009 WL 5454437 (D. Ct. Minn. July 10, 2009) ................................. 13

*Huntington Bancshares, Inc. v. Ally Financial, Inc.*,
    No. 27-CV-11-20276 (D. Ct. Minn. Dec. 11, 2012) ................... 8, 13, 16

*In re Digi Int'l, Inc. Sec. Litig.*,
    6 F. Supp. 2d 1089 (D. Minn. 1998) ..................................................... 6

*In re IndyMac Mortg.-Backed Sec. Litig.*,
    793 F. Supp. 2d 637 (S.D.N.Y. 2011) ................................................. 10

*In re Lehman Bros. Sec. & ERISA Litig.*,
    800 F. Supp. 2d 477 (S.D.N.Y. 2011) ................................................. 10

*La Parilla, Inc. v. Jones Lang LaSalle Americas, Inc.*,
    2006 WL 2069207 (D. Minn. July 26, 2006) ................................. 16, 17

*Moua v. Jani-King of Minn., Inc.*,
    613 F. Supp. 2d 1103 (D. Minn. 2009) ............................................. 3, 4

*Nance v. Evje*,
    2007 WL 2472449 (Minn. Ct. App. Sept. 4, 2007) ............................ 15

*Parnes v. Gateway 2000*,
    122 F.3d 539 (8th Cir. 1997) ................................................................ 4

*Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin.
    Holdings Ltd.*,
    886 F. Supp. 2d 328 (S.D.N.Y. 2012) ................................................. 10

*Safeco Ins. Co. v. Dain Bosworth Inc.*,
    531 N.W.2d 867 (Minn. Ct. App. 1995) ......................................... 15, 17

**Page(s)**

*Signature Bank v. Marshall Bank*,
   2006 WL 2865325 (Minn. Ct. App. Oct. 10, 2006) ............................................... 15

*Streambend Props. III, LLC v. Sexton Lofts, LLC*,
   2012 WL 38338 (D. Minn. Jan. 9, 2012) ................................................................. 5

*Summit Recovery, LLC v. Credit Card Reseller*, LLC,
   2010 WL 1427322 (D. Minn. Apr. 9, 2010) ...................................................... 16, 17

*Taylor v. United Parcel Serv., Inc.*,
   554 F.3d 510 (5th Cir. 2008) ................................................................................ 11

*TCF Banking & Sav., F.A. v. Arthur Young & Co.*,
   706 F. Supp. 1408 (D. Minn. 1988) ....................................................................... 12

*Trooien v. Mansour*,
   608 F.3d 1020 (8th Cir. 2010) ............................................................................ 3, 5

*Williams v. Smith*,
   820 N.W.2d 807 (Minn. 2012) .............................................................................. 15

*Witzman v. Lehrman, Lehrman & Flom*,
   601 N.W.2d 179 (Minn. 1999) ................................................................................ 8

**Statutes**

15 U.S.C. § 77m ................................................................................................. 10

Minn. Stat. § 80A.90(a) ....................................................................................... 13

**Rules**

Fed. R. Civ. P. 9(b) .............................................................................................. 4

## INTRODUCTION

Plaintiffs' omnibus opposition brief suffers from the same defect as their Amended Complaint (the "Complaint").  Plaintiffs rely on allegations and arguments directed to "defendants" collectively, without articulating defendant-specific facts sufficient to establish how any of the Ally Defendants committed fraud.  Under the law of this circuit, plaintiffs cannot state a claim for fraud with such group allegations.  Thus, plaintiffs' fraud claims against the Ally Defendants fail because the Complaint does not allege with particularity facts sufficient to establish that (1) either Ally Securities or Ally Bank knowingly made any material misstatements, or (2) either Ally Bank or Ally Financial knowingly aided and abetted fraud by any other defendant.

Nor can plaintiffs solve this shortcoming by treating various Ally-affiliated entities, most of which are not parties to the litigation, as if they were a single entity.  Plaintiffs' opposition is devoid of any case law in this circuit supporting the theory that the actions of one corporate entity may be imputed to all of its affiliated entities for purposes of a fraud claim.  Plaintiffs try to cure this defect by arguing that "Ally Financial and the affiliated entities it controlled were engaged in a scheme" to dupe purchasers of mortgage-backed securities.  (Opp. 8)  But the Complaint contains no allegations of fact sufficient to support the contention that Ally Securities, Ally Bank and Ally Financial knowingly participated in any such scheme.

The other counts in the Complaint similarly fail to state any viable claim against the Ally Defendants.  *First*, plaintiffs' claims against Ally Securities under the Securities Act of 1933 are time-barred as a matter of law.  *Second*, plaintiffs' claims under the

Minnesota Securities Act ("MSA") are barred as a matter of law by the applicable three-year statute of repose.  *Finally*, plaintiffs' negligent misrepresentation claim fails as a matter of law because the Complaint does not allege the Ally Defendants owed a duty of care to plaintiffs, much less breached any such duty.

## ARGUMENT

As a threshold matter, plaintiffs misstate the applicable standard governing this motion.  Citing a Minnesota state-court decision, plaintiffs assert that "a pleading will be dismissed ***only if it appears to a certainty*** that no facts, which could be introduced consistent with the pleading, exist which would support granting the relief demanded." (Opp. 16; emphasis in original)  This is a paraphrase of the oft-repeated standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which the Supreme Court overruled and abrogated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To survive a motion to dismiss under the Federal Rules, a complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not stated a viable claim for relief.  *Id.* at 679.

## I.   The Complaint Fails To State A Claim Against The Ally Defendants For Common Law Fraud.

In their opposition, plaintiffs largely ignore the Eighth Circuit and District of Minnesota authority cited in the Ally Defendants' opening brief stating that when a plaintiff asserts a fraud claim against multiple defendants, the complaint must include

factual allegations establishing a plausible basis for fraud against *each of the defendants* and cannot attribute allegedly fraudulent statements or conduct to "defendants" generally. *See, e.g., Trooien v. Mansour*, 608 F.3d 1020, 1030 (8th Cir. 2010); *Gould v. Citi Mortg., Inc.*, 2011 WL 7615124, at *18 (D. Minn. Dec. 29, 2011); *Moua v. Jani-King of Minn., Inc.*, 613 F. Supp. 2d 1103, 1111 (D. Minn. 2009).   The Complaint fails to state a fraud claim against Ally Bank, Ally Securities or Ally Financial because it contains no specific factual allegations sufficient to establish that *those defendants* made any fraudulent statement or culpably participated in the fraudulent conduct of others.

### A.      The Complaint Fails To Allege Ally Bank Or Ally Securities Engaged In Conduct Sufficient To Support A Claim For Fraud.

**Ally Bank**.  Plaintiffs acknowledge the first element of a claim for fraud under Minnesota law is "a false statement of a material fact."  (Opp. 16)  But plaintiffs' opposition, like their Complaint, does not identify any specific misrepresentation allegedly *made by Ally Bank*.  Nor do plaintiffs identify *any employee of Ally Bank* who was involved in making any of the alleged misrepresentations.  Instead, plaintiffs argue that since they have alleged the "existence of a vertically integrated securitization enterprise," which they assert Ally Financial "ultimately controlled," they can state a fraud claim against Ally Bank by alleging (1) it was an indirect subsidiary of Ally Financial, and (2) other indirect affiliates of Ally Financial allegedly made fraudulent representations to purchasers of the securities at issue.  (Opp. 40)  This fraud-by-association theory fails absent allegations of fact about what Ally Bank itself did or said in connection with the sale of the securities to plaintiffs.

Plaintiffs' opposition ignores that the Complaint does not allege *how* or *when* Ally Bank participated in the allegedly fraudulent sales process, *what* input Ally Bank provided concerning the specific alleged misrepresentations in the offering materials, or *who* from Ally Bank allegedly participated in any fraudulent conduct—all of which are required by Rule 9(b).  *See Parnes v. Gateway 2000*, 122 F.3d 539, 550 (8th Cir. 1997). Instead, plaintiffs rely on allegations that Ally Bank was in the business of providing financing for mortgage originations, managing loan originations, and servicing mortgages.[1]  (Opp. 46-47)  But the basis of plaintiffs' *fraud* claim is not that mistakes were made in the origination, pooling, securitization and servicing of mortgages — it is that the offering documents on which plaintiffs allegedly relied contained material misstatements.

Plaintiffs attempt to invoke the so-called "group pleading" doctrine, under which some courts treat group-published documents as the collective work of multiple defendants.  (Opp. 44-45 & n.25)  As plaintiffs acknowledge, the Eighth Circuit "has not yet adopted the group pleading doctrine" (*id.*), and courts in this circuit have declined to apply it.  *See, e.g., Moua*, 613 F. Supp. 2d at 111; *Gould*, 2011 WL 7615124, at *18. Moreover, the doctrine would not support a claim against Ally Bank in any event because

---

[1]   Although the Complaint contains the vague and conclusory allegation that Ally Bank was "involved" in "assisting in the origination and acquisition of the defective loans included in the securitizations" (Cmplt. ¶ 34), there are no specific allegations of fact about Ally Bank actually originating *any* of the loans at issue.  The Complaint contains 110 paragraphs of allegations about 18 originators of the securitized loans (*id.* ¶¶ 143-61, 213-303), but *not one* of these paragraphs mentions Ally Bank.  In any event, participation in originating loans is not equivalent to making false representations to plaintiffs.

it is applied only where the complaint alleges that all the defendants in question "were involved in the preparation of the allegedly misleading statements." *Bank of Montreal v. Avalon Capital Group, Inc.*, 743 F. Supp. 2d 1021, 1029 (D. Minn. 2010); *see also Streambend Props. III, LLC v. Sexton Lofts, LLC*, 2012 WL 38338, at *7 (D. Minn. Jan. 9, 2012) (dismissing fraud claim against one defendant because the complaint did not allege with specificity any representations that were made by or attributable to *that defendant* "as opposed to the other Defendants"). Here, the Complaint does not allege Ally Bank participated in preparing the allegedly misleading offering documents.

Finally, the trial court decision in *Allstate Ins. Co. v. GMAC Mortg., LLC*, 2011 WL 7943021 (Minn. Dist. Ct. Nov. 28. 2011), does not support the assertion that plaintiffs have stated a fraud claim against Ally Bank. (*See* Opp. 41) First, that court did not apply federal pleading standards, which require particularized allegations of fraudulent conduct by each defendant. *See Trooien*, 608 F.3d at 1030. Second, although plaintiffs argue *Allstate* upheld fraud claims "against many of the [] same Defendants and Debtors" named in this case (*id.*), Ally Bank was *not* a named defendant in *Allstate*. Third, plaintiffs note that the *Allstate* court based its ruling on the fact that the complaint "tie[d] each Defendant to a specific Certificate purchase" by the plaintiff. (Opp. 41 n.23) Plaintiffs' Complaint here does *not* tie Ally Bank to any specific transaction.

**Ally Securities**. Plaintiffs do not dispute that a claim for common law fraud requires *knowing* misrepresentation of material facts. (Opp. 16) But plaintiffs are unable to identify any allegations in the Complaint supporting a plausible inference that Ally Securities knowingly made any misrepresentations in the offering documents. While

5

plaintiffs argue that knowledge may be "averred generally" (*Id.* at 46), even the authority

on which plaintiffs rely makes clear Rule 9(b) requires a fraud complaint to set forth facts

"giving rise to a strong inference of scienter" and "explaining why it is claimed that the

representations were known by each of the Defendants to be untrue or misleading when

they were made." *In re Digi Int'l, Inc. Sec. Litig.*, 6 F. Supp. 2d 1089, 1096 (D. Minn.

1998). Here, the Complaint contains no factual allegations sufficient to support a strong

inference that Ally Securities knew there were material misstatements in the offering

documents.

Plaintiffs argue that the various underwriter defendants, including Ally Securities,

had access to "due diligence information revealing the extent of the fraudulent material

misrepresentations and omissions contained in the Offering Documents." (Opp. 44,

citing Cmplt. ¶¶ 81-82, 99, 351-57) But the paragraphs cited merely (1) describe "the

securitization process generally" (Cmplt. ¶¶ 81-82), (2) identify which underwriters

worked on which transactions (*id.* ¶ 99), and (3) contain allegations about due diligence

performed by the "Outside Underwriters", *not Ally Securities* (*id.* ¶¶ 351-57). With

respect to Ally Securities in particular, plaintiffs cite only the generalized allegation that

it "had access to loan files and due diligence reports detailing the characteristics of the

loans." (Opp. 47) Neither this allegation nor any other facts alleged in the Complaint

support a strong inference that Ally Securities was aware the offering documents made

material misrepresentations about the characteristics of the loans in the securitizations purchased by plaintiffs.[2]

Ultimately, plaintiffs' fraud claim against Ally Securities relies on the "group pleading" doctrine — that the Complaint need not allege any knowingly fraudulent conduct by Ally Securities because it was part of an "integrated enterprise" of various affiliated companies involved in designing, structuring and marketing the securities at issue. (Opp. 44-45)  As discussed above, the Eighth Circuit has not adopted the group pleading doctrine.  Nor would that doctrine aid plaintiffs in establishing Ally Securities' scienter.  Even the authority cited by plaintiffs makes clear the group pleading doctrine operates only to attribute *statements* to multiple participants in a securities offering, not to attribute *scienter* to all members of such a group.  *See Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 651 F. Supp. 2d 155, 176-77 (S.D.N.Y. 2009).

## B. The Complaint Fails To State A Claim For Aiding And Abetting Fraud Against Ally Financial Or Ally Bank.

Plaintiffs do not dispute that, to state a claim of aiding and abetting fraud, they must allege *specific facts* showing that Ally Financial and Ally Bank (1) knew the representations made in the offering materials by other defendants were false and misleading, and (2) substantially assisted or encouraged other defendants to *commit the*

---

[2]   Plaintiffs rely on a decision in *FHFA v. Ally Financial, Inc.*, 2012 WL 6616061, at *3 (S.D.N.Y. Dec. 19, 2012), ruling that the federal agency appointed as conservator of Freddie Mac stated a claim against Ally Securities based on specific allegations about representations made with respect to securities purchased by Freddie Mac.  In particular, the court relied on "the firm's representations that it reviewed portions of the loan pools for compliance with guidelines."  The Complaint here contains no such allegations.

tort — *i.e.*, to make fraudulent misrepresentations in the offering materials.  *Witzman v.*

*Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 187 (Minn. 1999); *see also Huntington*

*Bancshares Inc. v. Ally Financial, Inc.*, No. 27-CV-11-20276 (D. Ct. Minn. Dec. 11,

2012).  Thus, an aiding and abetting claim must allege with particularity that the

defendant "knowingly and substantially assisted the underlying fraud."  *E-Shops Corp. v.*

*U.S. Bank Nat'l Ass'n.*, 678 F.3d 659, 663 (8th Cir. 2012).   Plaintiffs' opposition

identifies no specific facts alleged in the Complaint that satisfy these elements with

respect to either defendant.

**Ally Financial**.  Plaintiffs are unable to reference any factual allegations in the

Complaint supporting a strong inference that Ally Financial knew representations made

in the offering materials by other defendants were false or misleading.  Plaintiffs rely on

their allegation that GM Audit Services performed "audits" of "the Debtors' loan

acquisition and underwriting process and procedures" that the results of these audits

"were transmitted to Ally Financial and its management." (Cmplt. ¶ 515)  But the

Complaint does not allege anything specific about the results of these "process and

procedures" audits:  *what* (if anything) the auditors said about any of the loans at issue in

this case, *when* any such reports were made, or *who* received the reports.  An aiding and

abetting claim cannot rest on the bare inference that the defendant "must have had"

knowledge of the relevant facts.  *See Huntington Bancshares*, slip op. at 8.

To satisfy the "substantial assistance" requirement, plaintiffs rely primarily on

their allegations that, through its various subsidiaries, Ally Financial "has been directly

involved in mortgage origination and securitization since at least 2005."  (Opp. 75)  What

the Complaint does not allege is any factual basis for concluding that Ally Financial

either (1) substantially assisted in preparing the allegedly misleading offering documents

plaintiffs relied on in purchasing their securities or (2) encouraged any other defendants

to make misstatements in selling those securities to plaintiffs.

**Ally Bank**.  Plaintiffs' brief contains no argument in support of their aiding and

abetting claim against Ally Bank, but instead simply refers to their argument in support

of primary liability.  (Opp. 76)  Thus, plaintiffs do not attempt to explain how they have

pled the elements of aiding and abetting liability set forth in *Witzman* with respect to Ally

Bank.  This claim fails because the Complaint alleges no facts demonstrating that Ally

Bank played *any role whatsoever* in the preparation of the allegedly misleading offering

documents or in the sale of the securities at issue to plaintiffs.

## II.     The Complaint Fails To State A Viable Federal Securities Act Claim Against Ally Securities.

Plaintiffs do not dispute that their federal Securities Act claims are time-barred

with respect to all but three of the 59 securities at issue.  (*See* Cmplt. ¶¶ 634-39; Opp.

76)[3]  With respect to these three securities, plaintiffs argue that the tolling doctrine set

forth in *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), applies and that

those claims are not time-barred.  Plaintiffs' argument fails for two reasons.

As an initial matter, plaintiffs' Securities Act claims are time-barred under the

three-year statute of repose in Section 13 of Act, 15 U.S.C. § 77m, which is not subject to

---

[3]     Ally Securities was an underwriter for only two of the remaining securities — RALI 2006-QS18 and RALI 2007-QH4 — and plaintiffs thus have potential Section 12 claims against it only on those securities.  (*See* Cmplt. ¶¶ 99, 634-39)

*American Pipe* tolling.  *See*, *e.g.*, *Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, 886 F. Supp. 2d 328, 334 (S.D.N.Y. 2012); *In re IndyMac Mortg.-Backed Sec. Litig.*, 793 F. Supp. 2d 637, 642-43 (S.D.N.Y. 2011); *In re Lehman Bros. Sec. & ERISA Litig.*, 800 F. Supp. 2d 477, 482-83 (S.D.N.Y. 2011).[4]

But even if the Court were to find that the three-year statute of repose in the '33 Act is subject to *American Pipe* tolling, plaintiffs' claims are still time-barred under the one-year statute of limitations period in Section 13.  As plaintiffs acknowledge, *American Pipe* tolling continues only "until class certification is denied."  (Opp. 78, quoting *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983).  Here, the court in *N.J. Carpenters Health Fund v. Residential Accredit Loans, Inc.,* on which plaintiffs rely for *American Pipe* tolling, denied a motion for class certification on January 18, 2011, more than one-year before Plaintiffs filed this lawsuit on July 27, 2012.  (Opp. 78-80)  Plaintiffs do not dispute that, as of this date, they had knowledge of their Securities Act claims.  Because plaintiffs waited more than a year after class certification was denied before commencing this action, their Securities Act claims are barred by the one-year statute of limitations in Section 13.

---

[4]   There is no controlling Eighth Circuit or Supreme Court authority on whether the *American Pipe* rule can toll a statute of repose, and plaintiffs cite decisions that have applied *American Pipe* tolling to a statute of repose.  (Opp. 81-82)  However, for the reasons set forth in their Opening Brief, the Ally Defendants respectfully submit that the recent decisions cited above declining to toll the statute of repose reflect the better-reasoned view that *American Pipe* is a form of equitable tolling and should not be applied to lift the legislative bar established by the statute of repose.

Plaintiffs seek to avoid this result by arguing that any tolling available under *American Pipe* continued after the *New Jersey Carpenters* court issued its order denying class certification pending the outcome of an interlocutory appeal from that ruling.  (Opp. 84-86)  Plaintiffs cite no appellate authority in support of this argument, relying instead on a handful of district court decisions from other circuits.  (*Id.* at 85-86)  What plaintiffs do not tell the Court is that *every* circuit court to have addressed the scope of the *American Pipe* doctrine has concluded that "tolling ceases upon denial of class certification."  *Giovanniello v. ALM Media, LLC*, 660 F.3d 587, 589 n.1 (2d Cir. 2011) (collecting cases).  *See, e.g.*, *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 519 (5th Cir. 2008) ("[A]n appeal of the denial of class certification does not extend the tolling period."); *Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 211 (4th Cir. 2006) (noting that Supreme Court had adopted a "bright-line rule" that the statute of limitations remains tolled "until class certification is denied"); *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1378 (11th Cir. 1998) (*en banc*) ("[T]olling of the statute of limitations ceases when the district court enters an interlocutory order denying class certification.").

While the Eighth Circuit has not decided the issue, a district court in this circuit recently addressed the issue at length and rejected plaintiffs' argument that an interlocutory appeal from an order denying class certification extends *American Pipe* tolling.  *Barkley v. Woodbury County, Iowa*, 874 F. Supp. 2d 759, 774-79 (N.D. Iowa 2012).  Citing the unanimous circuit court precedent on the limits of *American Pipe* tolling, the court explained that those appellate courts "have given cogent reasons for refusing to extend the tolling period after denial of class certification through any appeal

11

of that decision." *Id*. at 776.  After discussing the reasoning of these decisions, the court

ruled:  "I conclude that the Eighth Circuit Court of Appeals would join its sister circuits

in holding that *American Pipe* tolling ends with the district court's decision denying class

certification, not with a decision on any interlocutory appeal." *Id*. at 778

Finally, the *New Jersey Carpenters* "stay orders" plaintiffs refer to in their

opposition did not independently toll the limitations period that governs plaintiffs'

Securities Act claims in this case.  Plaintiffs quote no language in those stay orders

suggesting that one purpose of the stay was to extend the limitations period for filing

separate claims—such as plaintiffs'—that had not yet been brought at the time of the

class certification decision.  Thus, plaintiffs' Securities Act claims are time-barred and

should be dismissed as a matter of law.

## III.   Plaintiffs' Minnesota Securities Act Claims Against The Ally Defendants Are Time-Barred.

Plaintiffs do not dispute that their MSA claims against Ally Financial and Ally

Securities are barred under the three-year statute of repose in the version of the MSA that

was in effect until July 31, 2007.[5]  Plaintiffs' primary response to the Ally Defendants'

motion to dismiss on this ground is that the prior version of the MSA does not apply,

---

[5]   Plaintiffs could not argue to the contrary because the law is well settled that claims under the prior MSA are governed by a strict three-year statute of repose that commences running upon the making of the misstatement or omission alleged to constitute a violation of the Act and is not subject to any form of tolling. *See*, *e.g.*, *TCF Banking & Sav., F.A. v. Arthur Young & Co.*, 706 F. Supp. 1408, 1415 (D. Minn. 1988); *Bormann v. Applied Vision Sys., Inc.*, 800 F. Supp. 800, 814 (D. Minn. 1992). Here, it is undisputed that all of the allegedly misleading offering documents were issued more than three years before plaintiffs filed suit.

even though all of the conduct forming the basis for plaintiffs' claims against them occurred before July 31, 2007.  (Opp. 88-90)

Section 80A.90(a) provides unambiguously that the predecessor version of the MSA "exclusively governs all actions or proceedings that are pending on August 1, 2007, or may be instituted on the basis of conduct occurring before August 1, 2007."  Minn. Stat. § 80A.90(a).  Thus, the prior version of the Act applies to actions that (1) had already been filed on the effective date of the new Act or (2) were subsequently filed based on conduct occurring before that date.  As one Minnesota court stated in applying this provision, the prior version of the Act is "still in effect *for conduct occurring before August 1, 2007*."  *Hehman v. Head*, 2009 WL 5454437, at \*10 (D. Ct. Minn. July 10, 2009) (emphasis added).  In the recent *Huntington Bancshares* case, the trial court similarly ruled that the three-year statute of repose in the prior version of the Act governed a virtually identical MSA claim against the Ally Defendants because, as here, all of the claims were "based on conduct occurring before August 1, 2007."  Slip op. at 9.

Plaintiffs' argument for avoiding the statute of repose in the prior Act depends on rewriting the language of Section 80A.90(a).  According to plaintiffs, the predecessor Act only governs proceedings that "could have been instituted" prior to August 1, 2007. (Opp. 88; emphasis omitted)  Thus, plaintiffs argue the words "may be instituted" should be changed to "could have been instituted."  Plaintiffs' proposed construction would impermissibly render the words "based on conduct occurring" superfluous since, by definition, no action "could have been instituted" before August 1, 2007 based on anything other than conduct occurring before that date.  *See*, *e.g.*, *Cody v. Hillard*, 304

F.3d 767, 776 (8th Cir. 2002) (court should not construe language in statute in a manner that renders other language in statute meaningless or superfluous).

Based on their rewriting of this provision, plaintiffs then argue that the new statute applies because their claims "could not have been instituted" until 2008, when ratings agencies started downgrading the securities they had purchased. The Minnesota legislature, however, did not say that application of the new MSA turned on when a plaintiff was "impacted by the Defendants' wrongdoing" or whether other events causing it damage occurred after August 1, 2007. (Opp. 89) In defining the applicability of the prior version of the MSA, the legislature used the word "conduct," which in this context can only be read as referring to the conduct of the defendant — for that is what provides the basis for the claim — not actions of third parties such as ratings agencies or events such as the collapse of the housing market. Plaintiffs cite *no decision, by any court*, construing Section 80A.90(a) in the manner they propose.[6]

## IV.   The Complaint Fails To State A Claim Against The Ally Defendants For Negligent Misrepresentation.

Plaintiffs' opposition does not dispute that a defendant may be liable for negligent misrepresentation only if it owes a duty of care to plaintiffs. (Opp. 94-95) Contrary to

---

[6]   Only one of the 59 securitizations at issue, RALI 2007-QS11, was offered for sale after August 1, 2007. (Cmplt. ¶¶ 622-23) Plaintiffs' claim based on this securitization, which plaintiffs do not dispute was downgraded below investment grade by S&P and Fitch in late 2008, is barred by the applicable two-year statute of limitations in the new version of the MSA because plaintiffs had knowledge of the facts "constituting the violation" well over two years before they filed this suit in July 2012. Plaintiffs provide no plausible basis for their argument that they could not have known they had a claim until certain other plaintiffs had filed suits against Ally affiliates sometime in late 2010. (*See* Opp. 90-92)

plaintiffs' assertion that the existence of such a duty "is a question of fact" (*id.* at 95), the Minnesota Supreme Court recently confirmed that whether defendant owes plaintiff a duty of care "is a question of law." *Williams v. Smith*, 820 N.W.2d 807, 816 (Minn. 2012). Thus, the threshold issue for the sufficiency of this claim is whether, *as a matter of law*, plaintiffs have alleged facts establishing that the Ally Defendants owed plaintiffs a duty of care. Under settled Minnesota law, they have not.

The leading authority on negligent misrepresentation in the context of arms-length commercial transactions is *Safeco Ins. Co. v. Dain Bosworth Inc.*, 531 N.W.2d 867 (Minn. Ct. App. 1995). In *Safeco*, the court held that no duty of care exists where sophisticated parties engage in an arms-length commercial transaction where the defendant is "selling a deal," absent a "special relationship" between the contracting parties. *Id.* at 872-73. Subsequent Minnesota appellate court decisions have followed *Safeco* and reached the same conclusion. *See Nance v. Evje*, 2007 WL 2472449, at *4 (Minn. Ct. App. Sept. 4, 2007) ("Negligent misrepresentation is limited to situations where one party is providing guidance to another; there is no cause of action when the parties are engaging in an arms-length commercial transaction."); *Signature Bank v. Marshall Bank*, 2006 WL 2865325, at *4-5 (Minn. Ct. App. Oct. 10, 2006) (noting that "*Safeco* is controlling law" and affirming judgment for plaintiff where "the parties were commercial parties negotiating at arm's length without a special relationship").[7]

---

[7] Plaintiffs acknowledge that the Minnesota Supreme Court recently "cited Safeco favorably" in *Williams*, 820 N.W.2d at 818. (Opp. 97) In addition to *Safeco*, the Court also cited other decisions in Minnesota and other jurisdictions holding that no duty of care arises in arms-length commercial transactions. *Id.* at 817-18 n.3.

Plaintiffs do not claim their purchases of the securities at issue were anything other than arms-length commercial transactions, but nevertheless attempt to distinguish *Safeco* on the ground that the defendant in that case was not providing information "for guidance," whereas here the defendants had "superior information" and *were* providing information for plaintiffs' "guidance." (Opp. 97) The decisions following *Safeco* do not support such a distinction. Indeed, two recent Minnesota trial courts, addressing precisely the same kinds of claims plaintiffs assert here, have relied on *Safeco* in dismissing negligent misrepresentation claims against the issuers and underwriters of mortgage backed securities because the defendants owed no duty to plaintiff. *Huntington Bancshares*, slip op. at 8-9; *Allstate Ins. Co.*, 2011 WL 7943021, at *12.

Federal courts in this district dismissing negligent misrepresentation claims based on *Safeco* similarly refute plaintiffs' reading of that decision. *See, e.g., Summit Recovery, LLC v. Credit Card Reseller*, LLC, 2010 WL 1427322, at *3-4 (D. Minn. Apr. 9, 2010); *La Parilla, Inc. v. Jones Lang LaSalle Americas, Inc.*, 2006 WL 2069207, at *10-11 (D. Minn. July 26, 2006). Both decisions rejected the same kind of argument plaintiffs make here: that the Ally Defendants owed plaintiffs a duty of care because they had "special knowledge" about information set forth in the offering documents. (Opp. 95-96) In *Summit Recovery*, the plaintiff purchased a consumer-debt portfolio consisting of roughly 40,000 debt accounts, and the plaintiff alleged the defendant owed it a duty because it "controlled the information about the Portfolio." 2010 WL 1427322, at *1, 4. The court ruled that the defendant owed no duty because it "merely provided information to [plaintiff]," but did not provide guidance to the plaintiff relating to the potential purchase

or otherwise act in the plaintiff's interest.  *Id.* at *4.  Similarly in *La Parilla*, the court

cited *Safeco* in ruling that "[a]lthough Defendants provided information to Plaintiffs, they

were not guiding them."  2006 WL 2069207, at *11.

Plaintiffs rely principally on the non-precedential decision in *Cornerstone Home

Builders, Inc. v. Guyers Dev., LLC*, 2010 WL 1541344 (Minn. Ct. App. Apr. 20, 2010).

But *Cornerstone* is not persuasive authority for the assertion that the Complaint

adequately alleges a claim for negligent misrepresentation against the Ally Defendants.

In contrast to the numerous state and federal decisions following *Safeco* and dismissing

negligent misrepresentation claims, no court applying Minnesota law has followed

*Cornerstone* on this issue.

In sum, Minnesota law is clear that no duty of care exists between sophisticated

parties negotiating a business transaction "unless the parties have a special relationship"

such as "attorney-client, insurance agent-client, and real estate agent-client."  *La Parilla*,

2006 WL 2069207, at *10 (citing *Safeco*, 531 N.W.2d at 871-72).  Here, the Complaint

does not allege any factual basis for finding that the Ally Defendants had any such

"special relationship" with plaintiffs that could form the basis for a duty.  Indeed, the

Complaint does not allege Ally Financial, Ally Bank, IB Finance or GMAC Mortgage

Group had *any* "relationship" whatsoever with plaintiffs.[8]  And plaintiffs neither argue

for nor cite any authority to support the conclusory allegation in their Complaint that Ally

---

[8]   Indeed, plaintiffs' opposition brief does not make any argument whatsoever for how it
states a claim against IB Finance or GMAC Mortgage Group.

Securities' role as an underwriter established a "fiduciary" relationship with plaintiffs sufficient to establish a duty of care.

Finally, plaintiffs *argue* that "Ally was in the business of providing information to investors" regarding the transactions at issue.  (Opp. 95-96)  The Complaint, however, does not *allege* that any of the Ally Defendants was in the business of providing information for the guidance of others.  Rather, the Complaint alleges that the defendants "were in the business of underwriting home mortgage loans, pooling the mortgage assets for securitization, issuing RMBS, and marketing RMBS to investors."  (Cmplt. ¶ 705) While the Complaint alleges defendants prepared "Offering Documents" in connection with the sales of the securities at issue, plaintiffs cite no authority applying Minnesota law holding that an issuer or underwriter of securities owes purchasers a duty of care by virtue of preparing such documents.

## CONCLUSION

For the reasons stated above and in the Ally Defendants' opening brief, the Amended Complaint should be dismissed with prejudice.

18

Dated:  March 29, 2013                    TIMOTHY D. KELLY, P.A.


By: _s/ Sarah E. Bushnell_____
      Timothy D. Kelly (#54926)
      Sarah E. Bushnell (#0326859)
      3720 IDS Center
      80 South Eighth Street
      Minneapolis, MN  55402
      Tel:    (612) 349-6171
      Fax:    (612) 392-7053
      tkelly@timkellypa.com
      sbushnell@timkellypa.com

      KIRKLAND & ELLIS LLP
      Robert J. Kopecky (*pro hac vice*)
      Seth A. Gastwirth (*pro hac vice*)
      300 North LaSalle
      Chicago, IL  60654
      Tel:    (312) 862-2000
      Fax:    (312) 862-2200
      robert.kopecky@kirkland.com
      seth.gastwirth@kirkland.com

      *Attorneys for Defendants*
      *Ally Financial Inc.,*
      *Ally Bank,*
      *IB Finance Holding Company, LLC,*
      *Ally Securities LLC, and*
      *GMAC Mortgage Group LLC*